**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

KERRIE STONE, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

ADVANCE AMERICA, CASH ADVANCE CENTERS, INC.; ADVANCE AMERICA, CASH ADVANCE CENTERS OF CALIFORNIA, LLC; and DOES 1 through 50, inclusive,

Defendants.

CASE NO. 08cv1549 WQH (WMc)

**ORDER**

HAYES, Judge:

The matter before the Court is the Motion to Dismiss First Amended Complaint (Doc. # 19).

**Background**

On July 16, 2008, Plaintiff Kerrie Stone initiated this action by filing a class action complaint in the Superior Court of California, County of San Diego. *Not. of Removal*, p. 1-2. On August 21, 2008, Defendants removed the complaint to this Court (Doc. # 1) on grounds that this Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. 1332(d). On October 10, 2008, Plaintiff filed the first amended complaint ("FAC") (Doc. # 16), which is the operative pleading in this case.

The FAC alleges that Plaintiff is an individual residing in San Diego County, CA. The FAC alleges that Defendant Advance America, Cash Advance Centers of California, LLC ("Advance America/California") is a Delaware limited liability company with its principal place of business in South Carolina, and that Defendant Advance America, Cash Advance Centers, Inc. ("Centers") is a Delaware corporation with its principal place of business in South Carolina. The FAC alleges that Advance America/California is the alter ego of Centers for the following reasons:

> (1) Centers appears to be the sole owner of Advance America/California; (2) all of the officers of Advance America/ California appear to be officers of Centers; (3) Advance America/ California and Centers share the same corporate headquarters and administrative operations; (4) Centers appears to use Advance America/ California as a mere shell, instrumentality or conduit to conduct Centers' business in California; (5) Centers and Advance America/ California appear to share the same website, which California consumers can use to apply for cash advances; (6) Centers and Advance America/ California appear to share the same trade name in California; (7) Advance America/ California appears to prosecute lawsuits in California on behalf of Centers, and vice versa; and (8) Advance America/ California appears to be insufficiently capitalized to satisfy the liabilities alleged herein.

*FAC,* ¶ 5. The FAC alleges that Defendants are in the business of providing short-term cash advances to individual customers, which are regulated by the California Deferred Deposit Transaction Law ("CDDTL"), Cal. Fin. Code section 23000, *et seq.*

The FAC alleges that on or about December 30, 2005, Plaintiff "obtained a cash advance from an 'Advance America' branch in San Diego County." *Id.,* ¶ 10. The FAC alleges that "[o]n information and belief, . . . the branch is jointly operated by both Advance America/ California and Centers." *Id.* The FAC alleges that Plaintiff gave Defendants a check for $300.00, and in exchange Defendants gave Plaintiff approximately $255.00 in cash, keeping the difference as a service fee. The FAC alleges that the transaction "was memorialized in a standardized written contract" (the "Customer Agreement"). *Id.* The FAC alleges that "Defendants failed to give plaintiff any written disclosures of her rights or obligations before she entered into the [Customer Agreement]." *Id.* The FAC alleges that "Plaintiff was unable to repay the cash advance by the original due date," and that as a result, Defendants "charged plaintiff a fee to extend that date." *Id.* The FAC alleges that the "total

fees that plaintiff paid in connection with the cash advance transaction exceeded 15% of the face amount of her check." *Id.* The FAC alleges that the Customer Agreement "plaintiff entered into contained an unconscionable class action waiver clause," which is unenforceable. *Id.*, ¶ 11.

The FAC alleges causes of action for (1) violation of the CDDTL, (2) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code section 17200, *et seq.*, and (3) violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code section 1760, *et seq*. In support of the first cause of action for violation of the CDDTL, the FAC alleges that "Defendants included an unconscionable arbitration clause and class action waiver in the [Customer Agreement] entered into by plaintiff and the other Class members, which violated Cal. Fin. Code section 23035(h)(5)." *Id.*, ¶ 21. The FAC alleges that "Defendants failed to give plaintiff or the other members of [the Class] written notice of their rights and duties prior to entering into their cash advance transactions, in violation of Cal. Fin. Code sections 23035(c) and (f)." *Id.*, ¶ 22. In support of the second cause of action for violation of the UCL, the FAC alleges that Defendants' violations of the CDDTL alleged above constitute unlawful, unfair or fraudulent business acts or practices" under the UCL. *Id.*, ¶ 30. In support of the third cause of action for violation of the CLRA, the FAC alleges that "[i]n [the Customer Agreement], defendants misrepresented that they would not charge a fee to extend an existing deferred deposit transaction, when in fact they did," which constitutes "an unfair method of competition and/or an unfair or deceptive act or practice." *Id.*, ¶ 38. The FAC alleges that "by inserting an unconscionable arbitration clause and class action waiver into [the Customer Agreement], defendants committed an unfair method of competition and/or an unfair or deceptive act or practice." *Id.*

On October 30, 2008, Defendants filed the Motion to Dismiss the First Amended Complaint ("Motion to Dismiss"). Defendants move to dismiss the entire FAC as to Centers for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Defendants move to dismiss paragraph 21 of the first cause of action, the incorporation of paragraph 21 into the second cause of action and the entire third cause of

action as to all Defendants on grounds that Plaintiff lacks standing pursuant to Rule 12(b)(1), and Rule 12(b)(6). Defendants move to dismiss paragraph 22 of the first cause of action and the incorporation of paragraph 22 into the second cause of action for failure to state a claim pursuant to Rule 12(b)(6). On December 1, 2008, Plaintiff filed a Response in Opposition to the Motion to Dismiss (Doc. # 20). On December 8, 2008, Defendants filed a Reply (Doc. # 21). On February 10, 2009, Defendants filed a Notice of Recent Authority, referring the Court to *Meyer v. Spring Spectrum L.S.,* No. S153846 (Jan. 29, 2009 Cal.) (Doc. # 22).

## Analysis

### I. Motion to Dismiss the Amended Complaint in its Entirety as to Defendant Advance America, Cash Advance Centers, Inc. for Lack of Personal Jurisdiction

Defendants request that the Court dismiss Centers from this action with prejudice, pursuant to Rule 12(b)(2) for lack of personal jurisdiction. Defendants contend that Plaintiff has failed to satisfy her burden of establishing either general or specific personal jurisdiction over Centers. Plaintiff responds the exercise of personal jurisdiction over Centers is proper because Plaintiff has presented prima facie evidence that Centers either purposefully directed its activities at California, or purposefully availed itself of the privilege of conducting business in California; because Plaintiff's claims arise out of or relate to Centers' forum-related activities; and because Defendants have failed to demonstrate that the exercise of jurisdiction would be unreasonable.

On a motion to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of establishing personal jurisdiction. *Farmers Ins. Exchange v. Portage La Prarie Mut. Ins. Co.,* 907 F.2d 911, 912 (9th Cir. 1990). A district court has the discretion to take evidence at a preliminary hearing in order to resolve issues of credibility or disputed questions of fact with regard to jurisdiction. *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). Where the motion to dismiss is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to satisfy this burden. *Dole Food Co. v. Watts,* 303 F.3d 1104, 1108 (9th Cir. 2002). While the plaintiff cannot "simply rest on the bare allegations of its complaint," *Amba Marketing Systems, Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977),

uncontroverted allegations in the complaint must be taken as true. *AT&T v. Campagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Id.; see also Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). "[I]f a plaintiff's proof is limited to written materials, it is necessary only for these materials to demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss." *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

The exercise of personal jurisdiction over a nonresident defendant must be authorized under the state's long-arm statute and must satisfy the due process clause of the United States Constitution. *Pac. Atl. Trading Co. v. M/V Main Express*, 758 F.2d 1325, 1327 (9th Cir. 1985). California's long-arm statute permits the exercise of personal jurisdiction "on any basis not inconsistent with the Constitution of the United States." Cal. Civ. Pro. Code § 410.10. Due process requires that the defendant have such "minimum contacts" with the forum state that the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1954). Under due process analysis, a defendant may be subject to either general or specific personal jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

A. General Personal Jurisdiction

Defendants contend that "Plaintiff's Opposition does not rely on a theory of general jurisdiction, except to allege that general jurisdiction might exist if Advance America/ California is the alter ego or agent of Centers." *Reply*, p. 5. Defendants contend that the relationship between Centers and Advance America/ California is insufficient to establish personal jurisdiction over Centers because Centers and Advance America/ California "have complied with all corporate formalities necessary to maintain corporate independence;" Advance America/ California is adequately capitalized; and Centers and Advance America/ California are "separate and distinct corporate entities." *Mot. to Dismiss*, p. 6-7. In support of the assertion that Advance America/ California is not the alter ego of Centers, Defendants

submitted the Declaration of Thomas Newell, Vice President of Centers. Newell attests that Centers and Advance America/ California "are separate and distinct corporate entities;" that they maintain their "own separate corporate form and [were] incorporated for legitimate business purposes;" that they maintain "separate corporate books and records," hold separate corporate meetings and file separate tax returns; that corporate decisions "are made by each entity's separate board of directors/ managers;" and that they "have not and do not transfer money between the corporate entities for business or any other purpose, unless proper documentation has been made." *Newell Decl.*, ¶¶ 3-12. Defendants contend that there is no basis for a finding of general jurisdiction over Centers.

Plaintiff makes one reference general jurisdiction in the Opposition, stating that "[g]eneral jurisdiction would exist if Advance America/ California was either the alter ego or some agent of Centers." *Id.* at 2, n 1. Although the FAC alleges that Advance America/ California is the alter ego of Centers, Plaintiff submits no evidence in support of her allegation that Centers and Advance America/ California are not distinct corporate entities. *FAC*, ¶ 5.

"For general jurisdiction to exist over a nonresident defendant . . . the defendant must engage in continuous and systematic general business contracts, that approximate physical presence in the forum state." *Schwartzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (internal quotations omitted). "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Id.* To demonstrate that the alter ego doctrine applies, a plaintiff "must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate entities] would result in fraud or injustice." *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (internal quotations omitted).

Plaintiff has failed to submit any evidence to rebut Defendants' showing that Advance America/ California is not the alter ego of Centers. The Court concludes that Plaintiff has therefore failed to make a prima facie showing that Advance America/ California is the alter ego of Centers. Plaintiff does not assert any other basis for general personal jurisdiction over

Centers. The Court concludes that Plaintiff has failed to satisfy her burden of demonstrating that the Court has general personal jurisdiction over Centers.

B. Specific Personal Jurisdiction

Defendants contend that prior small claims lawsuits filed by Centers in California do not confer specific jurisdiction over Centers because they are "wholly unrelated" to the action presently before the Court. *Reply*, p. 1-2. Defendants contend that these lawsuits were filed more than four years ago, and involved different parties and different claims. Defendants contend that the existence of an interactive internet website whereby Centers allegedly solicits cash advance applications from California does not confer specific personal jurisdiction over Centers because there is no evidence that Plaintiff used, visited or even knew about the website; instead, Defendants contend that Plaintiff obtained the subject loan in person by visiting an Advance America/ California branch. Defendants contend that Centers' role in drafting the Customer Agreement is insufficient to confer personal jurisdiction over Centers because "merely drafting a contract is not the same as doing business in California." *Reply*, p. 3. Defendants contend that the Customer Agreement described in the FAC is between Advance America/ California and Plaintiff; and that the Customer Agreement was executed by an Advance America/ California employee and Plaintiff, and contains only the names, addresses and contact information of Advance America/ California and Plaintiff. Based on the foregoing, Defendants contend that the Court lacks specific personal jurisdiction over Centers because Plaintiff has failed to make a prima facie showing that Centers purposefully availed itself of the privilege of conducting activities in California or purposefully directed its activities at California; or that Plaintiff's claims arise out of or relates to Centers' forum-related activities.

Plaintiff contends that the purposeful availment/ purposeful direction element of the specific personal jurisdiction analysis is satisfied for three reasons. First, Plaintiff contends that "Centers purposefully availed itself of the privilege of conducting business in this state by filing at least 58 small claims lawsuits since 2000 in California courts against California residents who failed to repay their cash advances." *Opposition*, p. 3. In support of this

contention, Plaintiff submitted the Declaration of Kathryn A. Jordan, who attests that she researched lawsuits filed by Centers, and found that Centers has filed more than 50 small claims lawsuits in California. Plaintiff submitted certified copies of 10 of the small claims complaints, which allege that the defendant owes Centers money, that Centers has asked the defendant to pay this money, but that the money has not been paid. *Jordan Decl.,* Exhibit 1. Second, Plaintiff contends that "Centers has purposefully directed its activities at California by drafting and providing to its California subsidiary, for subsequent distribution to California residents, a Customer Agreement that contains fraudulent and unconscionable provisions." *Opposition,* p. 4. Relying on the Motion to Dismiss filed by Defendants, Plaintiff contends that "Centers admits that it drafted the Customer Agreement used by Advance America/ California." *Id.* Third, Plaintiff contends that "Centers has purposefully directed its activities at California by soliciting and taking cash advance applications from California residents through its websites." *Id.* at 5. In support of this contention, Plaintiff submitted the Declaration of Kathleen Clapp, who attests that she visited Centers' website, and that through its website, Centers solicits and takes cash advance applications from California residents. *K. Clapp Decl.,* ¶¶ 2-9. Plaintiff contends that her claims arise out of or relate to Centers' forum-related activities "because '[b]ut for' Centers' acts in making or assisting with the cash advance transactions and in drafting the Customer Agreement, plaintiff and the class would not have a claim against Centers." *Opposition,* p. 9. Based on the foregoing, Plaintiff contends that Centers has purposefully directed its activities at California and has purposefully availed itself of the privilege of doing business in California; that Plaintiff's claims arise out of or relate to Centers' forum-related activities; that Defendants have failed to show that the exercise of jurisdiction would be unreasonable.

A court exercises specific personal jurisdiction over a defendant where the cause of action arises out of or has a substantial connection to the defendant's contact with the forum. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,* 284 F.3d 1114, 1123 (9th Cir. 2002). The Ninth Circuit analyzes specific jurisdiction according to a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform

> some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007).

The first prong "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Menken,* 503 F.3d at 1057. The Ninth Circuit has "typically treated" this prong differently in tort and contract cases. The Ninth Circuit has stated:

> In tort cases, we typically inquire whether a defendant purposefully directs his activities at the forum state, applying an effects test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum. By contrast, in contract cases, we typically inquire whether a defendant purposefully avails itself of the privilege of conducting activities or consummates a transaction in the forum, focusing on activities such as delivering goods or executing a contract.

*Id.* (internal quotations and citations omitted). The "effects test" (applied in tort cases) imposes three requirements: "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 1058 (internal quotations omitted). With regard to contract cases, although a contract with a California resident alone is insufficient, purposeful availment is satisfied when most of the work called for by the contract was performed in the forum. *Roth v. Garcia*, 942 F.2d 617, 621 (9th Cir. 1991).

Under the second prong, the plaintiff's claim must arise out of or relate to the defendant's forum-related conduct. The Ninth Circuit follows the "but-for" test, where the plaintiff must "show that he would not have suffered an injury but for [the defendant's] forum-related conduct." *Menken,* 503 F.3d at 1058.

Under the third prong, the court analyzes whether the exercise of jurisdiction would be reasonable. The Ninth Circuit analyzes seven factors:

> (1) the extent of the defendants' purposeful interjection in the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Menken*, 503 F.3d at 1058. The defendant "bears the burden of overcoming a presumption that jurisdiction is reasonable by presenting a compelling case that specific jurisdiction would be unreasonable." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-72 (1985).

*i.* Small Claims Lawsuits

Plaintiff has made a prima facie showing that Centers has filed more than 50 small claims lawsuits in San Diego County since early 2000 to collect money owed to Centers. *Jordan Decl.*, ¶ 2; Exhibit 1. However, Plaintiff does not allege or submit any evidence to demonstrate that these lawsuits had any relation to Plaintiff or any other members of the class, or that these lawsuits had any relation to the claims asserted in the FAC. Thus, even if these lawsuits satisfied the purposeful availment/ purposeful direction prong of the personal jurisdiction analysis, Plaintiff has failed to allege or submit any evidence to demonstrate that Plaintiff would not have suffered an injury but for Centers' initiation of the small claims lawsuits. The Court concludes that Plaintiff has failed to make a prima facie showing that her claims arise out of or relate to the small claims lawsuits filed by Centers.

*ii.* Interactive Website

When personal jurisdiction is premised on a defendant's internet activity, courts must examine "the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997). "'[T]he contacts constituting purposeful availment must be the ones that give rise to the current suit.'" *Callaway Golf Corp. v. Royal Canadian Gold Ass'n,* 125 F. Supp. 2d 1194, 1204 (C.D. Cal. 2000) (quoting *Bancroft & Masters, Inc. v. Augusta National Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000); *see also Chloe v. Queen Bee of Beverly Hills*, 571 F. Supp. 2d 518, 529 (S.D.N.Y. 2008) ("it is more consistent with 'traditional statutory and constitutional principles,' to require some additional evidence of a defendant's 'purposeful availment' of the forum beyond that defendant's maintenance of an interactive commercial website, even when

the website permits consumers to place orders online"). In holding that the court lacked personal jurisdiction over the defendant, the *Callaway* court stated:

> The [defendant] may be said to have purposely availed itself of California as a forum by engaging in limited commercial activity through its Web site, as its Website was accessible to, and used by, California residents. However, these contacts have no relationship to plaintiff's claims against defendant. Put another way, it cannot be said that 'but-for' defendant's commercial activity on its Web site, plaintiff would not have suffered the injuries defendant allegedly caused.

125 F. Supp. 2d at 1204.

Plaintiff has made a prima facie showing that Centers solicits and takes cash advance applications from California residents through its websites. *Kathleen Clapp Decl.*, ¶¶ 2-9. However, Plaintiff does not allege or submit any evidence to demonstrate that Plaintiff used, visited, or even knew about the websites. Instead, the allegations in the FAC and the evidence submitted by Plaintiff demonstrate that Plaintiff obtained a loan in person by visiting an "Advance America" branch in San Diego County. *FAC*, ¶ 10. Even if Centers can be said to have directed its activities at California or purposefully availed itself of doing business in California through its interactive website, Plaintiff has failed to allege or submit any evidence to demonstrate that Plaintiff would not have suffered the injuries alleged in the Complaint but for Centers' soliciting and taking cash advance applications from California residents through its websites. The Court concludes that Plaintiff has failed to make a prima facie showing that her claims arise out of or relate to Centers' website.

*iii.* The Customer Agreement

The FAC alleges: "both defendants either drafted or distributed the subject deferred deposit transaction contracts, which (1) contain an unconscionable arbitration clause and class action waiver, and (2) misrepresent that customers will not be charged an additional fee or charge to extend the due date of their deferred deposit transactions." *FAC*, ¶ 3. Plaintiff asserts that by virtue of this conduct, "Centers has purposefully directed its activities at California by drafting and providing to its California subsidiary, for subsequent distribution to California residents, a Customer Agreement that contains fraudulent and unconscionable provisions." *Opposition*, p. 4. However, Plaintiff does not allege or submit any evidence to demonstrate that this conduct was "expressly aimed" at Plaintiff or any other member of the

class. *Bancroft*, 233 F.3d at 1087 ("expressly aimed" requirement satisfied when the defendant engages in wrongful conduct targeted at plaintiff whom defendant knows to be a resident of the forum state). Although courts have found personal jurisdiction over defendants who have drafted and entered into a contract with a California resident, *see Harris Rutsky & Co. Inc. Services, Inc.,* 328 F.3d 1122, 1131 (9th Cir. 2003), Plaintiff does not allege or submit any evidence to demonstrate that she entered into a contract with Centers. To the extent Plaintiff is attempting to assert that Centers actually entered into the Customer Agreement with Plaintiff because Cash Advance America/ California is a subsidiary of Centers, "a parent-subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes." *Harris Rutsky & Co. Inc.*, 328 F.3d at 1134. To the extent Plaintiff is attempting to assert that Centers actually entered into the Customer Agreement with Plaintiff because Cash Advance America/ California is the alter ego of Centers, as previously discussed, Plaintiff has failed to make this prima facie showing. In addition failing to make a prima facie showing that Centers purposefully directed its activities at California by drafting the Customer Agreement, Plaintiff also fails to allege or submit any evidence to demonstrate that she would not have suffered the injuries alleged in the FAC but for Centers' drafting and providing the Customer Agreement to Advance America/ California for distribution in California. Based on the foregoing, the Court concludes that Plaintiff has failed to make a prima facie showing that Centers purposefully directed its activities at California by drafting the Customer Agreement, or that Plaintiff's alleged injuries arise out of or relate to this conduct.

C. <u>Jurisdictional Discovery</u>

Defendants assert that "[i]t is within the discretion of the district court to deny jurisdictional discovery." *Reply*, p. 6. Defendants request that the Court "deny Plaintiff's request for jurisdictional discovery" because "such discovery will not change the basic facts of the case and will only delay these proceedings." *Id.*

Plaintiff requests the opportunity to take jurisdictional discovery if the "court is not persuaded that it has specific jurisdiction over Centers." *Id.* Plaintiff requests the opportunity to "propound a reasonable number of interrogatories, document requests, and Fed. R. Civ. P.

30(b) deposition notices to Centers and Advance America/ California to discover" the following:

> (1) the nature and extent of Centers' participation in cash advance transactions with California customers; (2) the nature and extent of Centers' solicitations of potential customers in California; (3) the nature and extent of Centers' efforts to collect funds from California customers who have defaulted; (4) the extent of any other business contacts that Centers has with California; (5) the extent to which Centers controls the operations of Advance America/ California; (6) the extent to which Advance America/ California is merely the alter ego of Centers; and (7) the extent to which Advance America/ California is the agent of Centers.

*Id.* at 10-11.

A district court has discretion to permit or deny jurisdictional discovery. *Boschetto v. Hansing,* 539 F.3d 1011, 1020 (9th Cir. 2008). "Discovery may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.*

The Court concludes that Plaintiff's discovery request is reasonable, and that Plaintiff should be allowed to conduct reasonable jurisdictional discovery in order to make a "more satisfactory showing" of jurisdictional facts. *Boschetto,* 539 F.3d at 1020. In light of the foregoing, the Court denies the Motion to Dismiss Centers for lack of personal jurisdiction. *See* Fed. R. Civ. P. 56(f).

**II. Motion to Dismiss the Claims in Paragraph 21 of the First Cause of Action, the Incorporation of Paragraph 21 into the Second Cause of Action, and the Entire Third Cause of Action as to All Defendants**

Defendants contend that Plaintiff "does not have Article III standing to bring any claim based upon the alleged unconscionability of the unexercised and unenforced arbitration clause or class action waiver set forth in the Customer Agreement." *Mot. to Dismiss,* p. 12. Defendants contend that "Plaintiff has suffered no injury as a result of the inclusion in the Customer Agreement of an arbitration provision and class action waiver clause because Defendants have not sought to enforce these provisions." *Id.* at 12. Defendants contend that "Plaintiff bases her entire standing argument on the fact that, at the earliest stage of this litigation, Defendants may have considered filing a motion to compel arbitration before ultimately deciding against that course of action and, instead, filing a motion to dismiss on the merits in court." *Reply,* p. 7. Defendants contend that Plaintiff's argument is insufficient to

support standing because defense counsel's "off-the-record and out-of-context comments" do not constitute an "ongoing threat." *Id.* Defendants request that the Court "dismiss the claim in paragraph 21 of the first cause of action and its incorporation into the second cause of action, as well as the entire third cause of action, for lack of Article III standing." *Mot. to Dismiss*, p. 14.

Plaintiff contends that "[a]s an initial matter, there is no basis for dismissing plaintiff's entire third cause of action" because "Defendants have not challenged plaintiff's standing to assert that defendants misrepresented that customers will not be charged a fee to extend their cash advance." *Opposition*, p. 11. Plaintiff contends that "[i]n any event, plaintiff has proper standing to challenge the arbitration clause" because "there is no dispute that defendants have threatened to enforce the unconscionable arbitration provision against plaintiff." *Id.* at 12. In support of this contention, Plaintiff submitted the Declaration of Lawrence L. Dany, III, Plaintiff's attorney. Dany attests that counsel for Defendants called him and stated that Defendants "would likely be seeking to compel arbitration." *Dany Decl.*, ¶ 3. Dany attests that Defendants stated that they wanted to know if Plaintiff would be seeking a remand before they prepared a motion to compel arbitration. *Id.*, ¶ 4. Plaintiff contends that "Defendants' threat to enforce the unconscionable arbitration clause presents a concrete risk of harm to plaintiff," and that Plaintiff "should be allowed to proceed with her claims to remove the risk that defendants will seek to enforce the unconscionable arbitration provision against her and/or the other class members." *Opposition*, p. 13.

To invoke the jurisdiction of the federal courts, a claimant must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy. *L.A. v. City of Lyons*, 461 U.S. 95, 101 (1983). To satisfy this requirement, a claimant must show they "[have] sustained or [are] immediately in danger of sustaining some direct injury" as a result of the defendant's conduct, and that the injury or threat of injury is "real and immediate," not "conjectural" or "hypothetical." *Id.* (quoting *Golden v. Zwickler*, 394 U.S. 103, 109-110 (1969)). "Injury in fact is a low threshold, which . . . need not be capable of sustaining a valid cause of action, but may simply be the fear or anxiety of future

harm." *Ross v. Bank of America*, 524 F.3d 217, 222 (2d Cir. 2008) (internal quotations omitted). The party asserting federal jurisdiction has the burden of establishing standing. *Daimlerchrysler Corp. v. Charlotte Cuno*, 547 U.S. 332 (2006).

To support Plaintiff's assertion that she has standing, Dany attests that on September 4, 2008, he spoke with Plaintiff's counsel and "said that Defendants would likely be seeking to compel arbitration." *Dany Decl.*, ¶¶ 3-4. Plaintiff also relies on an Ex Parte Motion for Leave to Extend Time to Answer or Otherwise Plead (Doc. # 7) filed by Defendants on September 5, 2008, which states that "[a]t the time of removal Defendants were, and still are, actively considering the option of filing . . . a motion for an order staying litigation and compelling arbitration." *Ex Parte Motion*, p. 2. Plaintiff has shown that Defendants have presented a genuine threat that they would seek arbitration pursuant to the Customer Agreement. Although Defendants assert that they "have not and do not intend to seek arbitration," Defendants have submitted no evidence in support of this assertion or to rebut Plaintiff's showing that Defendants have expressed an intent to seek arbitration. *Reply*, p. 7. Nothing would preclude Defendants from seeking to compel arbitration after the Court rules on the instant Motion to Dismiss. The cases relied on by Defendants are distinguishable because in those cases, the defendants never indicated an intent to compel arbitration. *See e.g.*, *Lee v. Capital One Bank*, 2008 U.S. Dist. LEXIS 17113 (N.D. Cal. 2008). The Court concludes that Plaintiff has demonstrated a real threat that Defendants would seek to compel arbitration pursuant to the Customer Agreement, and has therefore demonstrated an injury-in-fact within the meaning of Article III. The Court concludes that Plaintiff has standing to bring claims related to the arbitration clause in the Customer Agreement.

## III. Motion to Dismiss Paragraph 22 of the First Cause of Action and the Incorporation of Paragraph 22 into the Second Cause of Action as to All Defendants

Defendants assert that "[t]here is nothing in the Deferred Deposit Transaction Law stating that 'notice' has to be in a document separate from the customer's signature. In fact, it would defy logic to require the contract terms to be in a separate document than the part of contract that binds the parties." *Mot. to Dismiss*, p. 16. Defendants further assert that

"Advance America does provide customers with notice in a separate document." *Reply*, p. 9. In support of this assertion, Defendants submitted a copy of the Customer Agreement referred in the Complaint, which states: "You acknowledge and agree that before entering into this Customer Agreement, we distributed to you the CALIFORNIA NOTICE AND DISCLOSURE regarding deferred deposit transactions." *Mot. to Dismiss, Newman Decl.*, Exhibit A. Defendants contend that the "Court merely has to review the Customer Agreement to conclude that all the notice requirements are met and Plaintiff cannot therefore plead sufficient facts to state a claim as to violations of Sections 23035(c) and (f)" of the California Financial Code. *Mot. to Dismiss*, p. 16-17.

Plaintiff contends that "[n]either section 23035 nor any other provision in the CDDTL permits the licensee to merge the notice and the contract into a single document." *Opposition*, p. 15. Plaintiff contends that "Defendants' interpretation is inconsistent with the language of Section 23035(c), which requires the licensee to distribute the notice before entering into the deferred deposit transaction." *Id.* Plaintiff contends that "if the Legislature had intended that notice and contract could be merged into a single document, it would not have engaged Section 23035(f) - which requires that notice be written in the language used to negotiate the transaction in at least 10-point type - and Section 23035(g) - which imposes the identical requirement with respect to the contract." *Id.* Emphasizing that a civil statute must be broadly construed in favor of the statute's protective purpose, Plaintiff contends that the "only reasonable interpretation of the statute is that the Legislature intended the notice and the contract to be in separate documents." *Id.* at 15-16.

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a court must construe the complaint in the light most favorable to the plaintiff and must accept all well-pleaded factual allegations as true." *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). "The court need not accept as true, however, allegations that contradict facts that might be judicially noticed by the court, . . . and may consider documents that are referred to in the complaint whose authenticity no party questions." *Id.* (internal quotations omitted). "A court may consider evidence on which the complaint 'necessarily

relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006).

Section 23035 of the California Financial Code governs deferred deposit transactions. Section 23035(c) provides that "[b]efore entering into a deferred deposit transaction," a licensee shall provide notice to customers of their rights and duties under the CDDTL. Cal. Fin. Code § 23035(c). Section 23035(f) requires that the notice "shall be written and available in the same language principally used in any oral discussions or negotiations leading to execution of the deferred deposit agreement and shall be in at least 10-point type." *Id.,* § 23035(f). Section 23035(e) provides that "[a]n agreement to enter into a deferred deposit transaction shall be in writing and shall be provided by the licensee to the customer." *Id.,* § 23035(e). Section 23035(g) provides that the agreement "shall be written and available in the language principally used in any oral discussions or negotiations leading to the execution of the deferred deposit agreement; shall not be vague, unclear, or misleading and shall be in at least 10-point type." *Id.,* § 23035(g).

The FAC contains numerous allegations regarding the Customer Agreement such that the FAC "necessarily relies" on the Customer Agreement. *Marder,* 450 F.3d at 448. Defendants attached a copy of the Customer Agreement to the Motion to Dismiss, and no party disputes the authenticity of the copy of the Customer Agreement. *See id.* The Customer Agreement states: "You acknowledge and agree that before entering into this Customer Agreement, we distributed to you the CALIFORNIA NOTICE AND DISCLOSURE regarding deferred deposit transactions," and contains Plaintiff's signature. *Newman Decl.,* Exhibit A. Although the Customer Agreement is evidence that Plaintiff signed a document which states that Defendants distributed to Plaintiff "the California Notice and Disclosure regarding deferred deposit transactions," the Customer Agreement does not demonstrate that the "California Notice and Disclosure" provided notification to Plaintiff of her rights and duties in compliance with the CDDTL. Holding that Plaintiff's claim for lack of notice pursuant to the CDDTL fails on grounds that the Customer Agreement demonstrates that Plaintiff received

adequate notice pursuant to the CDDTL would also ignore the allegation in the FAC that Plaintiff did not receive adequate notice pursuant to the CDDTL because "Defendants failed to give plaintiff any written disclosures of her rights or obligations before she entered into the contract." *FAC*, ¶ 10. The Court construes the allegations in the FAC and supporting documents in the light most favorable to the Plaintiff. In light of the foregoing, the Court concludes that the FAC alleges sufficient facts to support a claim that Plaintiff never received any notice of her rights and obligations before she entered into the contract in violation of the CDDTL.

**Conclusion**

IT IS HEREBY ORDERED that the Motion to Dismiss (Doc. # 19) is **DENIED** with respect to the claims in paragraph 21 of the first cause of action in the First Amended Complaint, the incorporation of paragraph 21 into the second cause of action as well as the entire third cause of action; and with respect to the claims in paragraph 22 of the first cause of action in the First Amended Complaint and the incorporation of paragraph 22 into the second cause of action; and is **DENIED with leave to refile** with respect to the claims against Defendant Advance America, Cash Advance Centers, Inc. Plaintiff is granted leave to conduct jurisdictional discovery in compliance this Order.

DATED: March 20, 2009

William Q. Hayes

**WILLIAM Q. HAYES**
United States District Judge