

DOSTART
CLAPP
GORDON &
COVENEY
LLP

4370 LA JOLLA VILLAGE DRIVE, SUITE 970
SAN DIEGO, CALIFORNIA  92122-1253
TELEPHONE: 858-623-4200
FAX: 858-623-4299

**JAMES F. CLAPP**
DIRECT DIAL 858-623-4220
E-MAIL: JCLAPP@SDLAW.COM

September 28, 2009

VIA ELECTRONIC FILING

Hon. William McCurine, Jr.
U.S. District Court, Courtroom C
940 Front Street
San Diego, CA 92101

   Re: Stone v. Advance America, Cash Advance Centers, Inc., Case No. 08-1549

Dear Judge McCurine:

   Plaintiffs respectfully submit this letter brief in response to the Court's "Order Following Telephonic Discovery Conference," dated September 16, 2009, Docket No. 56.

I.  Factual and Procedural Background.

   This is a class action brought on behalf of California customers of Advance America, Cash Advance Centers, Inc. and Advance America, Cash Advance Centers of California, LLC (collectively "Advance America").  Advance America is the country's largest "payday lender."  A "payday loan" is a short-term loan (usually 15 days or less) at very high rates of interest (ranging from 400% to more than 1,200% on an annualized basis).

   Payday lenders who do business in California are regulated by the California Deferred Deposit Transaction Law ("CDDTL"), Cal. Fin. Code sections 23000 et seq. Plaintiffs Kerrie Stone, Justina Rodriguez, and Frank Brightwell allege that Advance America has engaged in widespread violations of the CDDTL.  In their Third Amended Complaint ("TAC"), Docket No. 59, plaintiffs allege that Advance America violated the CDDTL by, inter alia:

   1.  Charging illegal fees to extend or "roll-over" payday loans, in violation of Cal. Fin. Code sections 23036(a) and (b) (see TAC, para. 25);

   2.  Failing to distribute required legal notices to customers before they enter into payday loans, in violation of Cal. Fin. Code section 23035(c) (see TAC, para. 24);



3.     For those customers who negotiate their loans in a language other than English, failing to provide the legal notices and payday loan contracts in that language, in violation of Cal. Fin. Code section 23035(f) (see TAC, para. 24);

4.     Permitting customers to pay off one payday loan with the proceeds of another, in violation of Cal. Fin. Code section 23037(a) (see TAC, para. 26);

5.     Agreeing to make payday loans to customers while previous written agreements with those customers are still in effect, in violation of Cal. Fin. Code section 23036(c) (see TAC, para. 27); and

6.     Charging customers unconscionable rates of interest (which plaintiffs allege to be any interest rate of 500% or more), in violation of Cal. Fin. Code violation 23035(h)(5) (see TAC, para. 29; O'Donovan v. Cashcall, Inc., 2009 U.S. Dist. Lexis 5389, *24-26 (N.D. Cal. June 25, 2009) (denying motion to dismiss claim that 98% interest rate on an unsecured loan was unconscionable); Carboni v. Arrospide, 2 Cal.App.4th 76, 83-84 (1991) (holding that 200% interest rate on a secured loan was unconscionable)).

On July 13, 2009, plaintiffs served an interrogatory asking for the names and contact information of all persons in California who received a payday loan from Advance America during the four-year limitations period.  As the California Supreme Court held in Pioneer Electronic (USA), Inc. v. Superior Court, 40 Cal.4th 360, 373 (2007): "Contact information regarding the identity of potential class members is generally discoverable, so that the lead plaintiff may learn the names of other persons who might assist in prosecuting the case."  Advance America objected that the interrogatory violated the putative class members' privacy rights. See Defendants' Responses to Interrogatories, page 4:12-5:14, attached hereto as Exhibit 1.

During the meet and confer process, plaintiffs proposed that the parties utilize the "opt-out" procedure approved in Pioneer and by this Court in Salazar v. Avis Budget Group, Inc., Case No. 07-cv-0064-IEG (WMc), 2007 U.S. Dist. Lexis 97310 (S.D. Cal. Oct. 10, 2007).  Under that procedure: (1) the parties would jointly draft and mail a letter to the putative class members notifying them that plaintiffs were seeking their names and contact information; (2) the putative class members would have 21 days from the date of the mailing to object to disclosure; and (3) those putative class members who did not object would have their information produced to plaintiffs.[1]

Advance America refused to agree to the opt-out procedure.  Instead, Advance America proposed an opt-in procedure that was recently ordered (in an unpublished decision) by the San Diego Superior Court in Winters v. QC Financial Services, Inc., Case No. 37-2008-00091188-CU-BT-CTL.  See Winters Order, Exhibit 2. Plaintiffs' counsel,

---

[1]     As discussed below, plaintiffs are also willing to pay a third-party administrator to run any undeliverable notices through the U.S. Postal Service's National Change of Address ("NCOA") Database to increase the likelihood that the putative class members will receive the notice.



James F. Clapp, is also plaintiff's counsel in Winters.  The Winters court held that plaintiff is not entitled to the names and contact information of the putative class members unless they affirmatively consent to disclosure of that information ("opt-in").  Since the Winters order conflicts with Pioneer and numerous other cases (discussed below), plaintiff in Winters has sought appellate review of that order.  Plaintiff's petition for review by the California Supreme Court remains pending.

II.    The Court Should Order the *Pioneer* Opt-Out Procedure.

The opt-out procedure that plaintiffs have proposed strikes the proper balance between plaintiffs' need to investigate the class claims and the putative class members' privacy rights under the California Constitution, for four reasons.  First, under the cases discussed below, contact information is not particularly sensitive, and an opt-out procedure fully protects whatever privacy interests are at stake.  Second, the putative class members have an interest in receiving complete information about the claims that have been brought on their behalf, and it is reasonable to assume that they would want to communicate with plaintiffs and their counsel.  Third, it would be unfair to allow Advance America to retain exclusive use of the entire class list while plaintiffs are limited to contacting only those putative class members who give their consent.  Fourth, this case involves serious violations of the consumer protection laws, and the public has an interest in ensuring that these allegations are fully investigated.

A.    *Pioneer* and Numerous Other Cases Support Use of an Opt-Out Procedure.

Beginning with Pioneer, numerous state and federal courts in California have held that a class action plaintiff is entitled to the names and contact information of putative class members, either through an opt-out procedure, or without any notice to the putative class members at all.  Moreover, there is not a single reported case since Pioneer that mandates the use of the opt-in procedure proposed by Advance America.  (As noted above, Winters is an unpublished decision by a California trial court that is in the process of being appealed.)

In Pioneer, the plaintiff sought the names, addresses, and telephone numbers of other putative class members who purchased defective DVD players.  Id. at 364.  The defendant argued that producing the contact information would violate the putative class members' privacy rights.  Id.  The trial court ordered production of the names and contact information pursuant to an opt-out procedure.  Id. at 365.  The California Supreme Court upheld the trial court's order.  Applying the analytical framework set forth in Hill v. National Collegiate Athletic Association, 7 Cal.4th 1 (1994), the Pioneer court held that: (1) putative class members had a reduced expectation of privacy in their contact information since they had already voluntarily disclosed this information to the defendant, and in any event, it was reasonable to assume they would want their information disclosed to the plaintiff who was prosecuting the class claims (Pioneer at 372); (2) there was no serious invasion of privacy since contact information is not particularly sensitive, and putative class members had the opportunity to object to disclosure (Id. at 373); and (3) it would have been unfair to limit plaintiff's access to the contact information while the defendant retained the exclusive use and benefit of all of that information (Id. at 374).



Four published California appellate court decisions closely follow <u>Pioneer</u>. In <u>Belaire-West Landscape, Inc. v. Superior Court</u>, 149 Cal.App.4th 554 (2007), the court approved the use of an opt-out procedure in a wage and hour class action. Like the <u>Pioneer</u> court, the <u>Belaire</u> court reasoned that putative class members probably would want their contact information to be disclosed to plaintiffs who were prosecuting a class action on their behalf. <u>Id.</u> at 561. Second, the court found that no serious invasion of privacy would result from the disclosure of contact information subject to the opt-out procedure. <u>Id.</u> at 561-62. Third, the court found that the plaintiffs' need for the information outweighed the limited privacy interests at stake. <u>Id.</u> at 562.

In <u>Puerto v. Superior Court</u>, 158 Cal.App.4th 1242 (2008), the court held that the trial court abused its discretion by failing to order production of contact information to plaintiffs. In that case, the defendant produced the names of 2,600 current and former employees of defendant but refused to produce their contact information. <u>Id.</u> at 1246. Plaintiffs brought a motion to compel, but the trial court ruled that the employees' contact information would be disclosed only if they affirmatively consented to disclosure (opted-in). The appellate court reversed the trial court's order and held that plaintiffs were entitled to the addresses and telephone numbers without <u>any</u> notice procedure. <u>Id.</u> at 1260. Like the <u>Pioneer</u> and <u>Belaire</u> courts, the <u>Puerto</u> court ruled that: (1) the employees' expectation of privacy was limited since it was reasonable to assume they would want their contact information disclosed to the attorneys who were prosecuting the class claims (<u>id.</u> at 1253); (2) there was no serious invasion of privacy, since contact information is not particularly sensitive (<u>id.</u> at 1254); and (3) the balance of interests favored production, since it would be unfair to allow the defendant to have exclusive use of that information during the litigation (<u>id.</u> at 1256).

In <u>Lee v. Dynamex, Inc.</u>, 166 Cal.App.4th 1325 (2008), the trial court denied the plaintiff's motion to compel the names and contact information of the putative class members on the ground that plaintiff's motion was "premature." <u>Id.</u> at 1330-31. Subsequently, the court denied plaintiff's motion for class certification. The appellate court reversed the denial of class certification and directed the trial court to compel the defendant to produce the contact information subject to the <u>Pioneer</u> opt-out procedure. <u>Id.</u> at 1338. The court held that, in light of <u>Pioneer</u>, "there can be no question the trial court abused its discretion by denying the motion to compel disclosure of … names and addresses through the use of the opt-out procedure proposed by [plaintiff]." <u>Id.</u> at 1338.

Finally, in <u>Crab Addison, Inc. v. Superior Court</u>, 169 Cal.App.4th 958 (2008), the defendant in a wage and hour class action tried to circumvent <u>Pioneer</u> by having its employees sign a release form stating that they did not want their contact information disclosed to third parties. In response to the plaintiff's motion to compel, the defendant argued that the putative class members had a heightened expectation of privacy over their contact information by virtue of the release forms. The court refused to give effect to the release forms, because enforcing the releases would have frustrated public policy by depriving the putative class members of information about statutory wage claims that were being prosecuted on their behalf. <u>Id.</u> at 970-72.



In addition to these appellate court decisions, at least three federal courts, including this Court, have relied on <u>Pioneer</u> to grant plaintiff access to the names and contact information of putative class members.  In <u>Salazar</u>, this Court ordered the defendant to produce the names and contact information of putative class members pursuant to an opt-out procedure.  The Court applied the balancing test set forth in <u>Hill</u> and in <u>Pioneer</u>.  First, the Court found that the putative class members have a "legally protected privacy interest" over their contact information, as well as a  reasonable expectation that the information would remain private.  <u>Id.</u> at *5.  On the other hand, the Court recognized that the proposed invasion of privacy was "minimal" and was likely outweighed by the putative class members' consumer advocacy rights.  <u>Id.</u> at *6.  In reaching this conclusion, the Court observed that "class action lawsuits can serve a valuable social function in addressing the rights of the public."  <u>Id.</u>  The Court also found it significant that defendant had not identified a single putative class member in its Rule 26 disclosures.  That fact suggested "a possible divergence between the interests of [defendant] and the interest of the targeted employees," which meant that "[defendant's] concern about the privacy rights of the potential class members is actually driven more by the employer's self-interest."  <u>Id.</u> at *8.

In <u>Hill v. Eddie Bauer</u>, 242 F.R.D. 556 (C.D. Cal. 2007), the plaintiff sought documents reflecting the putative class members' "hours, wages, business-related expenses, repayment of wages to employer, termination wages, meal breaks and rest breaks."  <u>Id.</u> at 560.  The defendant objected on various grounds, including the right of privacy.  Citing <u>Pioneer</u>, the court ruled that plaintiff's need for the documents to pursue class certification outweighed the putative class members' privacy rights.  <u>Id.</u> at 563.  The court granted the motion to compel, subject to a protective order stating that, if a party intended to file a document containing private information with the court, that private information must be redacted.  <u>Id.</u>

Most recently, in <u>Sanbrook v. Office Depot</u>, 2009 U.S. Dist. Lexis 30852 (N.D. Cal. March 30, 2009), the court granted the plaintiff's motion to compel documents reflecting the contact information of defendant's customers during the class period.  The court did not order any form of pre-production notice (either opt-out or opt-in), for three reasons.  First, the court interpreted <u>Pioneer</u> as holding only that an opt-in procedure is <u>not</u> required; <u>Pioneer</u> did not mandate an opt-out procedure.  <u>Id.</u> at *2-3.  Second, the court noted that defendant would have a significant advantage if it had access to entire customer list while plaintiff was limited to those customers who did not opt-out.  <u>Id.</u> at *3, <u>quoting Pioneer</u>, 40 Cal.3d at 373-74.  Third, the identity and location of witnesses having personal knowledge are proper subjects of discovery, and "[d]efendant has not shown any factual basis for giving its customers greater protections than what the law provides for other persons having discoverable knowledge."  <u>Id.</u> at *3.[2]

---

[2]     In a pre-<u>Pioneer</u> case called <u>Wiegele v. Fedex Ground Package System</u>, 2007 U.S. Dist. Lexis 9444 (S.D. Cal. Feb. 8, 2007), Judge Miller upheld Magistrate Judge Porter's order requiring the defendant to produce the names and addresses of the putative class members without any notice procedure.  Judge Miller found that Judge Porter's order "properly balanced Plaintiff's need and due process right to conduct discovery on class action issues [citation], against the putative plaintiff's right to privacy."  <u>Id.</u> at *5-6.



To summarize: under the vast weight of authority, plaintiffs are entitled to the contact information of putative class members, either through an opt-out procedure, or without any notice to the putative class at all.  Furthermore, there is not a single reported case since <u>Pioneer</u> that mandates the use of the opt-in procedure proposed by Advance America.

      B.     <u>The Balancing Test Discussed in *Pioneer* and *Salazar* Favors Plaintiffs.</u>

As discussed in <u>Pioneer</u> and <u>Salazar</u>, the Court must consider several factors in ruling on plaintiffs' request for the contact information: (1) to what extent the putative class members have a "legally protected privacy interest" over their contact information; (2) whether the putative class members have a reasonable expectation that their contact information would not be disclosed without their affirmative consent; and (3) whether production of the contact information subject to the opt-out procedure constitutes a serious invasion of privacy.  <u>Pioneer</u>, 40 Cal.4th at 372-74; <u>Salazar</u> at *5-6.  The Court must also balance the putative class members' privacy rights against the competing interests at stake, including the plaintiffs' right to obtain discovery to prove their claims, the putative class members' interest in communicating with the plaintiffs who are bringing a lawsuit on their behalf, and the public's interest in enforcing the consumer protection laws such as the CDDTL.  <u>Pioneer</u> at 372-74; <u>Salazar</u> at *6.

As to the first and second factors, plaintiffs agree that putative class members have both a legally protected privacy interest and a reasonable expectation that their contact information would remain private.

However, as to the third factor, requiring the disclosure of contact information pursuant to an opt-out procedure would not be a "serious invasion of privacy."   Contact information is not particularly sensitive, and giving the putative class members the right to opt out of disclosure fully addresses whatever privacy concerns the putative class members might have.  <u>Pioneer</u> at 373; <u>Salazar</u> at *6 (noting that the putative class members' privacy interests were "minimal"); <u>accord</u> <u>Belaire</u>, 149 Cal.App.4th at 562; <u>Puerto</u>, 158 Cal.App.4th at 1253-54.

Nevertheless, Advance America will argue that an opt-out procedure is inadequate because the disclosure of contact information would also reveal the fact that putative class members are customers of a payday lender, which is private financial information.  The Court should reject this argument in light of <u>Valley Bank of Nevada v. Superior Court</u>, 15 Cal.3d 652 (1975).  In that case, the plaintiff sought discovery of information relating to loan transactions between a bank and seven customers who were not parties to the lawsuit.  <u>Id.</u> at 655.  Observing that there is no bank-customer privilege under California law (<u>id.</u> at 656), the court directed the bank to follow an opt-out procedure to protect the customers' financial privacy rights:

        "[B]efore confidential customer information may be disclosed in the course of civil discovery proceedings, the bank must take reasonable steps to notify its customer of the pendency and nature

Case 3:08-cv-01549-AJB-WMC   Document 61   Filed 09/28/09   Page 7 of 10

DOSTART
CLAPP
GORDON &
COVENEY
LLP

Hon. William McCurine, Jr.
Page 7

of the proceedings and to afford the customer a fair opportunity to assert his interests by objecting to disclosure, by seeking an appropriate protective order, or by instituting other legal proceedings to limit the scope or nature of the matters sought to be discovered." Id. at 658.

Here, the invasion of privacy is far less serious than in Valley Bank, since plaintiffs seek only contact information and not the details of the financial transactions between Advance America and the putative class members. If an opt-out procedure was sufficient to protect the customers' financial privacy interests in Valley Bank, it should be sufficient here.[3]

California Code of Civil Procedure section 1985.3 provides further support for plaintiffs' argument that an opt-out procedure protects the putative class members' financial privacy rights. Under Section 1985.3, a state court litigant who seeks a nonparty's personal records (which include financial records as well as medical records, psychological records, and academic records) must give written notice to the nonparty of the request, and the nonparty may resist disclosure of the records by serving a written objection or by seeking a protective order. If the nonparty takes no action, the records are disclosed. C.C.P. section 1985.3(g); Puerto, 158 Cal.App.4th at 1257 (under section 1985.3, "the party seeking discovery is not required to obtain the consumer's affirmative consent to release of those records"). This is, in effect, an opt-out procedure. Section 1985.3 reflects the California Legislature's determination that an opt-out procedure fully protects the non-party's financial privacy rights under the California Constitution.

Advance America will argue that an opt-out procedure is inadequate because there is a risk that the opt-out notices might be lost in the mail or not delivered because customers have moved. However, as the Pioneer court recognized, "[o]rdinary mailed notice is deemed a reasonable notification procedure in a variety of contexts," including service of process, service of subpoenas, service of class action notices, and service of jury summonses. Pioneer at 373. Similarly, in the federal class action context, sending class notice by regular mail meets the requirements of due process. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 318 (1950); see also Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir. 1994) (absent class members in Rule 23(b)(3) class actions are only entitled to the "best notice practicable" under the circumstances, not to actual notice). Nevertheless, to

---

[3]      In Winters, the court distinguished Valley Bank on the ground that Valley Bank involved only seven bank customers while Winters involved tens of thousands of defendant's customers. This was error. The privacy analysis does not change based on the number of individuals who are affected. Puerto, 158 Cal.App.4th at 1255. In reversing the court below, the Puerto court wrote: "To the extent that the privacy invasion appears significant here, we believe that this is an artifact of the number of individuals involved …. It appears that the large number of witnesses identified by [defendant], rather than the actual significance of the privacy invasion with respect to each witness, may have impacted the court's analysis. We, however, see no manner in which the mere numerosity of witnesses alters the underlying analysis of the seriousness of the intrusion on the witnesses' privacy rights." Id.



increase the likelihood that putative class members actually receive the opt-out notices, plaintiffs are willing to pay a third-party administrator to run any undeliverable notices through the U.S. Postal Service's NCOA database.  See Serio v. Wachovia Securities, LLC, 2009 U.S. Dist. Lexis 27992, *23 (D.N.J. March 31, 2009) (sending class notice by first class mail and running the undeliverable notices through the NCOA database constitutes the best practicable method for providing class notice); Lewis v. Starbucks Corp., 2008 U.S. Dist. Lexis 83192, *14 (E.D. Cal. Sept. 11, 2008) (mailing notice by first-class mail and running the undeliverable notices through an agreed-upon commercial address database is the best notice practicable).  Thus, even if the putative class members' financial privacy rights are implicated by plaintiffs' request for their contact information, those financial privacy rights are fully protected by the opt-out procedure that plaintiffs have proposed.

        Finally, in addition to the putative class members' privacy rights, the Court must weigh the competing interests that are at stake.  One such interest is fairness to the litigants.  Plaintiffs have a due process right to investigate their class claims before filing their motion for class certification.  Wiegele, 2007 U.S. Dist. Lexis 9444 at *5, citing Bartold v. Glendale Federal Bank, 81 Cal.App.4th 816, 827 (2000).  Ordering an opt-in procedure would be unfair to plaintiffs, since it would create "an inequitable situation in which one party has access to all, or nearly all potential witnesses but the other party is dependent on the willingness of those witnesses to participate in discovery."  Puerto, 158 Cal.App.4th at 1256; accord Pioneer, 40 Cal.4th at 374.  Furthermore, an opt-in procedure would hamstring plaintiffs in discovery by making their "statutory entitlement to percipient witness discovery entirely dependent on the unreviewable decision of third parties whether they are interested in participating."  Id.  Here, it is especially important that plaintiffs have access to as many putative class members as possible.  As in Salazar at *8, Advance America has failed to identify a single putative class member in their Rule 26 disclosures (see Exhibit 3), suggesting that there is a divergence in interests between defendants and the putative class. Advance America also admits that it has no records that reflect whether customers were given the required legal notices (see Exhibit 1 at 7:5-7), were allowed to pay off one loan with the proceeds of another (id. at 9:1-3 and 9:16-18), or were promised a new loan while a previous loan was still in effect (id. at 10:14-16 and 10:28-11:3), all of which are key liability issues.  See TAC, Docket No. 59, paras. 24, 26, and 27. Consequently, plaintiffs will need to gather information directly from the putative class members in order to prove their claims.

        The second interest that the Court must consider is the putative class members' interest in communicating with the plaintiffs.  Plaintiffs have brought a class action that, if certified, would affect the putative class members' legal rights. As the Pioneer court recognized, putative class members "might reasonably expect, and even hope, that their names and addresses would be given to [the] class action plaintiff."  Id. at 372; accord Belaire, 149 Cal.App.4th at 561 (current and former employees would "reasonably be expected to want their information disclosed to a class action plaintiff who may ultimately recover for them unpaid wages that they are owed"); Puerto, 158 Cal.App.4th at 1253 (putative class members "may reasonably be supposed to want their information disclosed to counsel whose communications in the course of investigating the claims asserted in this lawsuit may alert them to similar claims they may be able to assert").



Finally, the Court should consider the public's interest in enforcing California's consumer protection laws, including the CDDTL.   The <u>Pioneer</u> court warned that "requiring an affirmative waiver from persons whose personal identifying information is sought could have potentially adverse effects in cases brought to redress a variety of social ills, including consumer rights litigation." <u>Id.</u> at 374.  Similarly, this Court observed in <u>Salazar</u> that class action lawsuits serve a valuable social function in protecting the rights of the public. "The voice of a class rings more loudly and garners more attention than a single voice." <u>Id.</u> at *6.  Plaintiffs have alleged serious, widespread violations of the CDDTL. An opt-in procedure would limit plaintiffs' access to the putative class and would, in turn, restrict plaintiffs' ability to enforce the CDDTL for the benefit of the putative class members.

In summary, under the analytical framework discussed in <u>Pioneer</u> and <u>Salazar</u>, the Court should order an opt-out procedure.  The putative class members' contact information is not particularly sensitive, and to the extent that disclosure of that information implicates their financial privacy rights, those rights are fully protected by an opt-out procedure. Furthermore, an opt-out procedure properly balances the putative class members' privacy rights against the plaintiffs' interest in obtaining discovery, the putative class members' interest in receiving complete information about the lawsuit, and the public's interest in enforcing the consumer protection laws.

III.     <u>The Cases Advance America Will Cite Are Distinguishable.</u>

Advance America will likely cite <u>Colonial Life & Accident Ins. Co. v. Superior Court</u>, 31 Cal.3d 785 (1982), <u>Planned Parenthood Golden Gate v. Superior Court</u>, 83 Cal.App.4th 347 (2000), and <u>City of San Jose v. Superior Court</u>, 74 Cal.App.4th 1008 (1999), in support of their argument that the Court should order an opt-in procedure.  Each of these cases is distinguishable.  First, as the <u>Pioneer</u> court explained, the reason why the <u>Colonial Life</u> court ordered an opt-in procedure was that the Insurance Code expressly prevents an insurer from disclosing information learned about a person during an insurance transaction without that person's written authorization.  <u>Pioneer</u>, 40 Cal.4th at 369.  There is no such statutory requirement here.   In <u>Planned Parenthood</u>, anti-abortion activists sought the contact information of Planned Parenthood's employees.  The court found that the employees' privacy interests were "particularly strong" because disclosure of that information carried "profound" consequences, including the risk of "threats, force and violence" against the employees.  <u>Id.</u> at 360.  The putative class members face no such risks in this case.  Finally, <u>City of San Jose</u> is inapposite, because that case involved the balancing of a citizen's right to privacy against the public's interest in disclosure of government records under the California Public Records Act.  Unlike this case, <u>City of San Jose</u> did not involve a litigant's right to discover information to prove his case, a putative class member's right to receive information about claims that might benefit him, or the public's interest in enforcing the consumer protection laws.  If necessary, plaintiffs will discuss these cases in more detail in their reply brief.



IV.   Conclusion

For all of the foregoing reasons, plaintiffs respectfully request that the Court order the opt-out procedure described on page 2 above.

Sincerely,
DOSTART CLAPP GORDON & COVENEY, LLP

s/ James F. Clapp
**James F. Clapp**

JFC/tlz
Enclosures
cc:     Counsel for Advance America (via email)

84797.1