# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERRIE STONE, JUSTINA RODRIGUEZ, and FRANK BRIGHTWELL, individually and on behalf of all others similarly situated,,<br><br>Plaintiffs,<br><br>vs.<br><br>ADVANCE AMERICA, CASH ADVANCE CENTERS INC., et al.,<br><br>Defendants. | CASE NO. 08-CV-1549-AJB (WMc)<br><br>ORDER ON SUMMARY JUDGMENT MOTIONS |

This is a consumer class action suit concerning payday lending practices as regulated by California law. Now before the Court are several motions that were pending prior to their transfer to the under-signed judge. (The Court has scheduled a hearing on Plaintiffs' motion to certify a class on the Spanish language claims for November 14, 2011.) The parties did not request oral argument on the motions for summary judgment and to add a class representative and the Court finds these motions suitable for decision on the written briefs. As explained below, the Court GRANTS Defendants' motion for partial summary judgment on Plaintiffs' claims that they were not given written notice of their rights *before* entering into the loan agreement as measured by the time the customer became contractually obligated. The Court DENIES Defendants' motion for partial summary judgment on the Spanish-language claims arising out of transactions prior to August 2005 because the amended pleading relates back to the original complaint. The

1  Court DENIES Defendants' motion for partial summary judgment on the request for
2  prospective injunctive relief on the Spanish language claims because there is a factual
3  dispute as to whether Plaintiff Rodriguez has standing.  Finally, the Court DENIES as moot
4  Plaintiffs' motion to add a new class representative on the Spanish language claims request
5  for an injunction.

### **Background**

Plaintiffs Kerrie Stone, Justina Rodriguez, and Frank Brightwell are customers of Defendants Advance America, Cash Advance Centers of California, LLC, and its parent, Advance America, Cash Advance Centers Inc.

Defendants are in the business of providing short-term cash advances – commonly known as payday loans.  In California, the Commissioner of the Department of Corporations oversees the industry and requires each business to obtain a license.  Cal. Fin. Code § 23005.  For example, the licensee must post a "complete, detailed, and unambiguous schedule of fees."  *Id.* § 23019.  The licensee is required to keep certain financial records and the Commissioner may audit the licensee.  *Id.* §§ 23024, 23046; *see id.* § 23045 (authorizing suspension of license).  The statute also regulates the content of the notice of rights and the terms of the agreement.  For example, the agreement must be in writing and clearly describe the customer's obligations.  *Id.* § 23035.

Plaintiffs allege that Defendants violated the California Deferred Deposit Transaction Law ("CDDTL") and that their misconduct constitutes unfair competition. Cal. Fin. Code § 23000; Cal. Bus. & Prof. Code § 17200.

One of Plaintiff Rodriguez's transactions illustrates the process.  Defs.' Ex. A.  On October 21, 2004, Rodriguez gave Defendants a personal check for $300, but Defendants agreed not to cash it until November 5, 2004.  Defendants immediately gave Rodriguez $255 in cash and retained the $45 difference as a fee.  Although the interest on her fourteen day loan exceeds an annual percentage rate of 460%, the high interest is exempt from the usury provisions of the California Constitution.  Cal. Fin. Code  § 23106 (Cal. Const. art. 15, § 1); *id.* § 23036(a) ("A fee for a deferred deposit transaction shall not exceed 15

1  percent of the face amount of the check."). The CDDTL protects the customer from the
2  ordinary penalties of writing a check on insufficient funds, including treble damages and
3  possible criminal prosecution. *Id.* § 23035; Cal. Civ. Code § 1719. Instead, the statute
4  limits the fee to $15 for the return of a dishonored check. Cal. Fin. Code § 23036(e).

5  Remedies for violations include equitable relief (*e.g.*, injunction, disgorgement,
6  restitution); compensatory damages; treble damages; if willful, punitive damages; and
7  attorney's fees. *Id.* § 23064.

8  Both parties have waived a jury so there will be a bench trial.

9  **Discussion**

10 **I. Defendants' Motions for Summary Judgment**

11 Summary judgment is appropriate when the "pleadings, depositions, answers to
12 interrogatories, and admissions on file, together with the affidavits, if any, show that there
13 is no genuine issue as to any material fact and that the moving party is entitled to judgment
14 as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322
15 (1986).

16 **A. Motion on Written Notice of Rights**

17 Each individual Plaintiff claims Defendants violated the CDDTL by failing to give
18 written notice of the rights and duties *before* entering into the deferred deposit transaction.
19 TAC ¶¶ 10, 12; Defs.' Ex. G (Rodriguez's responses to interrogatory no. 11).[1]

20 The statute provides, in relevant part, "*[b]efore entering into* a deferred deposit
21 transaction, licensees [Defendants] shall distribute to customers a notice" of their rights.
22 Cal. Fin. Code § 23035(c) (emphasis added). This notice must contain information about
23 the charges on the transaction, a warning of the possibility that a $15 additional fee will be
24 charged if the check bounces, a toll-free number to call the Defendants with complaints,
25 and other rights. *Id.* The notice must be in writing and in the customer's language. *Id.* §
26 23035(f).

27

28  [1] Plaintiff Rodriguez obtained dozens of payday advances. At times, she spoke Spanish. This motion does not involve the transactions in which she spoke Spanish.

1    In a separate subsection, the statute lists the items that must be disclosed in the
2 written agreement. *Id.* § 23035(e). These include terms such as the total amount of fees
3 and the due date. *Id.* The agreement must be in writing and in the customer's language.
4 *Id.* § 23035(g).

5    The testimony of Jean Newman shows the sequence of events. When a customer
6 first enters the store, Defendants ask for the customer's personal information and then ask
7 how much she wants to borrow. Pls.' Ex. 1 (Newman Depo. at 97). Defendants receive a
8 check for the amount of the advance plus the fee, and enter that information into the
9 computer. *Id.* Defendants then print the two-page agreement and give it to the customer.
10 *Id.* The agreement contains the notice of rights. *E.g.*, Defs.' Ex. A. The rights are
11 incorporated into other language on the front of the agreement. *Id.* Then the customer
12 signs the agreement, Defendants sign it, and Defendants give the customer her money.
13 Pls.' Ex. 1 (Newman Depo. at 97).

14    Plaintiffs contend that the sequence violates the statute because Defendants provide
15 a single document containing both the notice and the agreement. Plaintiffs argue that the
16 statute is structured to recognize two separate subsections, therefore, Defendants should
17 first give the customer the notice, and then if the transaction continues, Defendants can
18 print the agreement for the customer to sign. Plaintiffs argue that the sequence used by the
19 Defendants improperly collapses the two steps. By the time the agreement is printed,
20 Defendants have already input the customer's name and contact information, the amount of
21 the loan, the due date, and the check number. "In other words, before the customer
22 agreement is even printed out, the customer has made the decision to get a loan for a certain
23 amount, has written his or her personal check, and has handed it to the employee." Pls.'
24 Opp. Br. at 5.

25    The Court concludes that Defendants are entitled to summary judgment on this
26 issue. *See People v. McCaskey*, 170 Cal. App. 3d 411, 415-16 (1985) ("Statutes must be
27 given a reasonable and common sense construction in accordance with the apparent
28 purpose and intention of lawmakers – one that is practical rather than technical . . . .")

1  (internal quotation marks and citation omitted).  The record shows that each Plaintiff
2  received timely notice of the rights before he or she became legally bound by the terms of
3  the agreement.  *E.g.*, Defs.' Exs. H-I (admission No. 3).  Defendants' two-page form
4  satisfies the purpose of the statute to ensure the customer is informed of her rights before
5  she becomes liable for the fee.  When the customer is handed the form that has been
6  personalized with the details of the current loan, she still has an opportunity to ask
7  questions or reject the offer.  The customer has not entered into a binding agreement until
8  both parties have signed the contract.

9  The Court has in mind cases from an analogous consumer credit statute, the federal
10 Truth-in-Lending Act.  *Bissette v. Colonial Mortg. Corp. of D.C.*, 477 F.2d 1245, 1246-47
11 (D.C. Cir. 1973) (interpreting act to require disclosures at a time when customer can
12 compare offers); James H. Pannabecker, Truth-in-Lending Manual, vol. I at 3-13 to 3-15
13 (rev. ed. 2011) (citing Official Staff Commentary 5(b)(1)) (concluding that disclosures
14 must be delivered to customer before he "becomes obligated").  One provision in that
15 statute gives the borrower a right to rescind the agreement within three days as measured
16 from the "consummation" of the transaction.  15 U.S.C. § 1635.  The regulation defines
17 consummation as "the time a consumer becomes contractually obligated on a credit
18 transaction."  12 C.F.R. § 226.2.  The Ninth Circuit used California law to define the
19 elements of a contract and concluded the statute referred to the time when the lender and
20 the borrower sign the agreement that creates mutual obligations.  *Jackson v. Grant*, 890
21 F.2d 118, 121-22 (9th Cir. 1989).

22 The Court therefore GRANTS Defendants' motion for partial summary judgment on
23 Plaintiffs' claim concerning the timing of the disclosure of the notice.

24 **B.  <u>Motion on Spanish Language Transactions Prior to August 2005</u>**

25 Defendants move for partial summary judgment on the Spanish language
26 transactions that occurred before August 2005.  They argue that the Spanish language
27 claims were first added to the lawsuit when the Second Amended Complaint ("SAC") was
28 filed in August 2009; therefore, the four-year statute of limitations bars recovery on

transactions that occurred prior to August 2005.

Plaintiffs filed the original complaint in State Court in July 2008.  Plaintiff Stone was the only named class representative.  Among other violations, the complaint alleged that Defendants violated subsections (c) and (f) of § 23035 by failing to give customers a written notice "in the language principally used by the customer."  Compl. ¶ 7B; *see id.* ¶¶ 8, 19.  Plaintiffs defined subclass A as those customers "who were not given a written notice, in the language principally used by that customer" as required by the CDDTL.  *Id.* ¶ 10A.

In August 2009, Plaintiffs filed their SAC which added Rodriguez as a named representative.  SAC ¶ 1.  Plaintiffs added a paragraph describing Rodriguez's transactions with Defendants and stating that she principally spoke Spanish.  *Id.* ¶ 11.

Federal Rule of Civil Procedure 15(c) states that a claim "relates back to the date of the original pleading" if it "arose out of the conduct, transaction, or occurrence set out – or attempted to be set out –  in the original pleading."  An amendment that adds a plaintiff relates back to the date of the original pleading when the defendant had adequate notice of the claim, the defendant is not unfairly prejudiced, and there is an identity of interests between the original and new plaintiffs.  *Immigrant Assistance Project of L.A. Cty Fed'n of Labor v. INS*, 306 F.3d 842, 857 (9th Cir. 2002).

Applying these rules to the instant case, the Court finds that the amended pleading relates back to the date of the original complaint.  The CDDTL claims in the original and amended pleading arise out of the same conduct – whether Defendants provided notice in the customer's principal language.  The original complaint alerted Defendants that Plaintiffs were relying on subsection (f), which requires the notice to be "written and available in the same language principally used in any oral discussions or negotiations leading to the execution of the deferred deposit agreement."  Cal. Fin. Code § 23035(f).  The SAC did not add a new cause of action or change the legal theory, rather, it relied on the same statutory provision cited in the original pleading.  Moreover, the original complaint proposed a class of customers affected by that requirement and Rodriguez would

1  be a member of that subclass.  The statute specifically contemplates that customers may not
2  speak English as their primary language, thereby recognizing the large number of
3  California residents who speak Spanish.  Given the express provision that requires
4  Defendants to use forms in the customer's language, they had reasonable notice of the
5  Spanish language claims.  The consumers protected by the CDDTL share a common
6  interest in enforcing the statute.  Importantly, Defendants have not been prejudiced in
7  preparing or maintaining a defense to the merits of the Spanish language claims.  The SAC
8  was filed before the parties commenced discovery, which allowed Defendants a full and
9  fair opportunity to investigate the issue.

10  Accordingly, the Court DENIES Defendants' motion for partial summary judgment
11  on the Spanish language claims arising out of transactions prior to August 2005.

### C. Motion on Standing to Seek Prospective Injunctive Relief

13  Defendants seek partial summary judgment on Plaintiff Rodriguez's standing to seek
14  injunctive relief because she is no longer a customer.[2]  Rodriguez's last transaction with
15  Defendants occurred in February 2009.  Defs.' Ex. A.

16  The case-or-controversy requirement of Article III of the United States Constitution
17  requires that a party have standing at the outset of litigation brought in federal court.
18  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180 (2000).  "Standing
19  doctrine functions to ensure, among other things, that the scarce resources of the federal
20  courts are devoted to those disputes in which the parties have a concrete stake."  *Id.* at 191

21  A plaintiff must demonstrate standing "separately for each form of relief sought."
22  *Id.* at 185.  When a plaintiff seeks an injunction, she must demonstrate that she is
23  "realistically threatened by a *repetition* of the violation."  *Gest v. Bradbury*, 443 F.3d 1177,
24  1181 (9th Cir. 2006) (internal quotation marks and citations omitted); *City of Los Angeles*
25  *v. Lyons*, 461 U.S. 95, 111 (1983) (no standing to seek injunction when no showing "that

---

[2]Defendants submitted a declaration to authenticate the proposed Fourth Amended Complaint. Defs.' Ex. C. Plaintiffs moved to strike the declaration on the ground that it pertains to confidential settlement discussions. The Court denies the motion as the declaration does not contain any such communications.

the plaintiff will be wronged again"). Here, Defendants contend that Rodriguez's deposition testimony establishes that it is not "'likely,' as opposed to merely 'speculative,' that the injury will be redressed" by a prospective injunction. *See generally Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (setting out elements of standing).

Plaintiffs bear the burden of proof. *Id.* at 561. When a defendant challenges standing in a summary judgment motion, the plaintiff must set forth specific facts showing a genuine issue of material fact. *Id.* If the facts are controverted, then the issue is resolved at trial. *Id.* Standing is determined on the facts as they existed when the complaint was filed. *Id.* at 570 n.4.

Standing is not established by a "mere profession of an intent, some day, to return" to Defendants' business, particularly when the conduct is within the plaintiff's own control. *Lujan*, 504 U.S. at 564 n.2.

If the named plaintiff lacks standing, then "system-wide injunctive relief is not available based on alleged injuries to unnamed members of a proposed class." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) (en banc) (citing *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).

Defendants rely on Rodriguez's testimony during her deposition. She testified that if she had known the charges, interest rate, and $15 bounced check fee, "then I would stopped . . . getting all those loans." Defs.' Ex. C (Rodriguez Depo. at 119); *id.* (Depo. at 121) ("If they had explained [the $15 bounced check fee], I could have stopped getting more loans."). Defendants interpret this testimony as showing that Rodriguez has no concrete plans to return to Defendants' centers and she therefore lacks standing to seek an injunction. *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 951 (S.D. Cal. 2007) (sua sponte raising lack of standing for injunction on false advertising claim as plaintiff now knew the truth about defendant's products); *see Wilson v. Costco Wholesale Corp.*, 426 F. Supp. 2d 1115, 1119 (S.D. Cal. 2006) (evaluating disabled plaintiff's plan to return in an accommodations case).

The Court denies the motion because there is a triable issue of fact concerning

1  Rodriguez's plan to obtain payday loans from Defendants in the future.  Rodriguez's
2  deposition testimony does not categorically state that she will never do business with
3  Defendants again; instead, she said that, had she known about the $15 fee, she would have
4  paid it and "wouldn't have gotten any more loans."  Defs. Ex. C (Rodriguez Depo. at 122).
5  While Defendants offer one interpretation of the cited testimony, Rodriguez's testimony is
6  ambiguous.  To oppose the motion, Rodriguez submitted a declaration to explain her
7  answers in the deposition.  In her declaration, Rodriguez states "I was not aware that I
8  could be charged only $15 if I bounced a check to Advance America.  Instead, I was afraid
9  that if I bounced a check to Advance America, Advance America might file criminal
10 charges against me or it might contact my employer about the bounced check."  Rodriguez
11 Decl. ¶ 2.  As Plaintiffs observe, the maximum fee of $15 for a bounced check *protects the*
12 *consumer* because she is not liable for treble damages or possible criminal prosecution.
13 Thus, it could have been more economical for Rodriguez to let her personal check bounce
14 and pay the $15 fee.  Instead, Rodriguez states that she feared the consequences of letting
15 her check bounce and entered into a cycle of debt in which a second loan was taken to
16 repay the first loan.  *Id.* ¶ 3 ("I felt trapped").  She explains that "I felt like I needed to
17 renew my loans over and over again." *Id.*  Often she would pay one loan by taking out
18 another loan from a different payday company (or from Defendants).  *Id.*

19 Rodriguez further states that she continues to be a regular payday loan customer, but
20 did not return to Defendants' centers once she became a plaintiff in this lawsuit. *Id.* ¶ 5. If
21 she prevails and Defendants provide her with a contract and notice in Spanish, then
22 "[s]ometime in the future, it is probable that I will try to take out another loan from
23 Advance America." *Id.*

24 Defendants argue that Rodriguez is attempting to manufacture a disputed fact by
25 filing a contradictory declaration, and the Court is sensitive to that possibility.
26 Nonetheless, the Court finds that Rodriguez's declaration properly explains and clarifies
27 her deposition testimony.  *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir.
28 1991).  She has offered a reasonable explanation of her deposition testimony, and that

1  question of fact defeats the summary judgment motion. *E.g., Gladstone Realtors v. Village
2  of Bellwood*, 441 U.S 91, 115 & n.31 (1979) (defendant may contest standing at trial);
3  *Truth v. Kent Sch. Dist.*, 542 F.3d 634, 642 (9th Cir. 2008) (finding genuine issue of
4  material fact on standing issue), *overruled on other grounds by*, *Los Angeles Cty. v.
5  Humphries*, 131 S.Ct. 447 (2010).

6  The Court DENIES Defendants' motion for partial summary judgment on Plaintiffs'
7  claim for prospective injunctive relief.

### II. Plaintiffs' Motion to Add New Class Representative

As a precaution, in the event the Court determined that Plaintiff Rodriguez did not, as a matter of law, have standing to seek injunctive relief on the Spanish language claims, Plaintiffs filed a motion to add a new class representative. Plaintiffs stated they would withdraw the motion if the Court denied Defendants' motion on standing. The Court did not grant that summary judgment motion, consequently, the Court DENIES as moot Plaintiffs' motion to add a new class representative.

### III. Remaining Pretrial Dates

Discovery closed in this case in July 2010. In December 2010, the Court vacated the remaining pretrial dates until the Court reached a decision on these pending motions. [# 92, 117, & 124]  Now that the dispositive motions have been resolved and a hearing has been set on the class certification motion, a schedule for the remaining pretrial dates must be scheduled. Within seven days of the filing of this Order, the parties shall contact Magistrate Judge McCurine and request a Third Amended Scheduling Order that will include a mandatory settlement conference and the dates necessary to prepare for a pretrial conference before the bench trial.

### Conclusion

Upon due consideration of the memoranda and exhibits, and for the reasons set forth above, the Court:

(1) GRANTS Defendants' motion for partial summary judgment on Plaintiffs' claims that they were not given written notice of their rights [ # 127];

1     (2) DENIES Defendants' motion for partial summary judgment on the Spanish-
2 language claims arising out of transactions prior to August 2005 [ # 133];
3     (3) DENIES Plaintiffs' motion to strike the declaration of Steuart Thomsen [# 149];
4     (4) DENIES Defendants' motion for partial summary judgment on Plaintiffs' claim
5 for prospective injunctive relief [# 134];
6     (5) DENIES as moot Plaintiffs' motion to add a new class representative [ #141]; &
7     (6) instructs the parties to promptly contact the magistrate judge to establish a Third
8 Amended Scheduling Order for the remaining pretrial dates.

**IT IS SO ORDERED.**

DATED:  November 7, 2011

                                          _____
                                          Hon. Anthony J. Battaglia
                                          U.S. District Judge